UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SIM SURGICAL, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.  4:20-CV-01060-JAR |
| | ) |
| SPINEFRONTIER, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff SIM Surgical, LLC ("SIM") brought this action against Defendant SpineFrontier, LLC ("SpineFrontier"), alleging SpineFrontier failed to pay it for custom medical devices. Currently before the Court is SIM's motion for summary judgment. SIM claims it is entitled to $193,828.65 in damages for breach of contract (Count I). In the alternative, SIM brought claims for unjust enrichment (Count II) and promissory estoppel (Count III).

The medical devices fall into three categories: 1) "Shipped Inventory", which SIM manufactured and delivered and SpineFrontier accepted, 2) "Unshipped Inventory", which SIM manufactured but did not deliver, and 3) "Reworked Inventory", which was delivered to SpineFrontier, but was returned to be reworked and is currently being held by SIM. SpineFrontier agrees that SIM is entitled to damages for the Shipped Inventory, but claims SIM is not entitled to summary judgment for the Unshipped or Reworked Inventory because SIM remains in possession of those devices. For the reasons set forth below, the Court will grant the motion as to the Shipped Inventory and deny it as to the Unshipped and Reworked Inventory.

1

I.      Facts

SIM began manufacturing custom medical devices for Spinefrontier in 2015. (Doc. No. 27, SIM's Statement of Uncontroverted Material Facts, ("SUMF") ¶¶ 1, 2). The devices are made based on SpineFrontier's specifications and cannot be resold to SIM's other customers unless a customer requests a device with the same specifications. No such devices have been ordered and SIM has not resold the Unshipped or Reworked Inventory. The parties do not have a single contract governing their agreement. Instead, their relationship is governed by a series of purchase orders. SpineFrontier places its orders by sending SIM a purchase order. *Id*. at ¶¶5,6. SIM will confirm its acceptance and send one or more invoices for the devices. *Id*. at ¶ 5. The purchase orders and invoices both contain payment terms of 30 days. *See* Doc. Nos. 27-4 and 27-7. Additionally, the purchase orders state the orders are FOB Destination. *See* Doc. No. 27-4.

Between August 2019 and January 2020, SpineFrontier sent SIM 24 purchase orders. (SUMF at ¶ 8). SIM manufactured and sent SpineFrontier invoices for the medical devices requested in the purchase orders. *Id*. at ¶¶ 16, 17.[1] SpineFrontier made a partial payment of $547.98 on one of the purchase orders, but has made no other payments. *Id*. at ¶ 19.

SIM delivered and SpineFrontier accepted the Shipped Inventory. *Id*. at ¶ 20. SpineFrontier owes SIM $118,158.94 on these orders, which it admits it owes and has not paid. In December of 2019, SIM delivered devices now identified as the Reworked Inventory to SpineFrontier. *Id*. at ¶ 26. SpineFrontier subsequently returned the devices to SIM to be reworked, and SIM then held the devices pending payment of SpineFrontier's outstanding balance.

---

[1]     SpineFrontier argues the purchase orders are hearsay. The purchase orders are contracts, and "[a] contract…is a form of verbal act to which the law attaches duties and liabilities and therefore is not hearsay." *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992)

2

*Id*. at ¶ 27, 28. The total amount unpaid on the invoice for the Reworked Inventory is $14,190.22. *Id*. at ¶ 29.

Beginning in October of 2019, SpineFrontier and SIM exchanged a series of emails in which SIM requested SpineFrontier pay down its accounts payable significantly. (Doc. No. 27-8). SpineFrontier informed SIM that it would process $10,000 payments each week, but would not be able to pay the total amount SIM requested. SIM responded on December 18: "Its my understanding that there is a firm 125k limit on the account, and the account is sitting with 204k in aging. This must be resolved immediately. While we appreciate your business, these terms are not acceptable and must be paid before we release any further products to Spine Frontier." *Id*. at 6. Beginning in January of 2020, SIM withheld shipment of the Unshipped Inventory and halted manufacturing on other SpineFrontier orders. (SUMF ¶ 23). In all, SIM sent 45 invoices for the Unshipped Inventory, which are dated between October 16, 2019 and March 25, 2021. (Doc. No. 27-7). The total amount unpaid on that inventory is $61,479.49. (SUMF ¶ 25).

The parties dispute both when payment accrued as well as the amount of time SpineFrontier had to make payments. SIM claims payment was due within 30 days of the receipt of an invoice, prior to delivery of the devices. *Id*. at ¶ 7. SpineFrontier claims payment was due, at the earliest, 30 days after the delivery of the goods. (Doc. No. 33 at 6). SpineFrontier also claims during the parties' five-year long relationship, SIM was flexible about the timing of payments and often allowed SpineFrontier over 90 days to remit payment. SpineFrontier asserts this flexibility was an essential aspect of the parties' business relationship. [2]

---

[2]  SpineFrontier relies on the Affidavit of Aditya Humad, (Doc. No. 33-1) as evidence of the parties' prior dealings. SIM argues the affidavit, does not comply with 28 U.S.C. § 1746 and as such the Court may not consider it. Humad states: "The foregoing statements are of my personal knowledge or knowledge acquired in my position as SpineFrontier's chief financial

3

Case: 4:20-cv-01060-JAR   Doc. #:  41   Filed: 02/10/22   Page: 4 of 9 PageID #: 368

## II.     Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## III.    Discussion

The parties agree that the dispute is governed by Missouri law and the agreements at issue are for goods, custom medical devices. As such the Uniform Commercial Code ("UCC"), governs the transactions. *See* Mo. Stat. Ann. § 400.2-102.

---

officer. Signed under the pains and penalties of perjury this 5th day of October 2021." (Doc. No. 33-1).

The 8th Circuit "interpreted Federal Rule of Civil Procedure 56(c) and 28 U.S.C. § 1746 as prohibiting a court's consideration of an unsworn statement or declaration when deciding a motion for summary judgment unless it is signed, dated, and certified as true and correct under penalty of perjury." *Zubrod v. Hoch*, 907 F.3d 568, 574 (8th Cir. 2018). Although Humad's affidavit is signed under penalty of perjury and dated, it is not certified as true and correct. However, a declaration that substantially complies with § 1746 may be sufficient. *See Kuehne v. Citimortgage, Inc.*, No. 4:10 CV 1902 DDN, 2012 WL 1205754, at *5 (E.D. Mo. Apr. 11, 2012). *See also Batista v. United States*, 792 F. App'x 134, 135 (2d Cir. 2020) (finding declarations "are not defective merely because they do not contain the precise phrase 'true and correct.'"). The Court need not decide whether Humad's affidavit substantially complies with § 1746, as it is clear even without considering the affidavit that SIM is not entitled to summary judgment for the Unshipped and Reworked Inventory.

4

### A. Promissory Estoppel and Unjust Enrichment

Although there is no single contract that governs the arrangement between SIM and Spinefrontier, the parties both acknowledge their obligations are set forth by express contracts—the purchase orders. (Doc. No. 37 at 1). As such, SIM is not entitled to summary judgment on Count II for unjust enrichment or Count III for promissory estoppel. *See Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014) ("[A] Plaintiff cannot recover under an equitable theory when she has entered into an express contract for the very subject matter for which she seeks to recover."); *Zipper v. Health Midwest*, 978 S.W.2d 398, 412 (Mo. Ct. App. 1998) ("Here, [Plaintiff] has other remedies at law available that would adequately compensate his injury and, therefore, he has failed to establish the final element required for application of promissory estoppel."). The Court will deny SIM's motion for summary judgment on Counts II and III.

### B. Breach of Contract

SIM contends SpineFrontier "entered into a contract with SIM for the manufacturing of these devices and agreed to pay invoices for the same within 30 days," but failed to remit the payments. (Doc. No. 28 at 5). Under Missouri Law, "[a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Missouri Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. 2010).

The purchase orders are separate contracts, and as such SpineFrontier's admitted breach of the contracts for the Shipped Inventory does not justify SIM withholding the Unshipped or Reworked Inventory. "It is well established that the breach of one contract does not justify the

5

aggrieved party in refusing to perform another separate and distinct contract." *Nat'l Farmers Org. v. Bartlett & Co., Grain*, 560 F.2d 1350, 1357 (8th Cir. 1977).

SIM argues it was entitled to withhold goods and recover the price of the contracts when SpineFrontier failed to render payment pursuant to Mo. Ann. Stat. §§ 400.2-709(1)(b) and 400.2-703(a). Pursuant to § 400.2-703(a), if a buyer "fails to make a payment due on or before delivery…then with respect to any goods directly affected, and, if the breach is of the whole contract…the aggrieved seller may withhold delivery of such goods."

A seller may sue to recover the price of the goods if two conditions are met. First, "the buyer fail[ed] to pay the price as it becomes due…." Mo. Ann. Stat. § 400.2-709(1)(b). Second, either 1) the buyer has accepted the goods; 2) the goods were lost or damaged within a commercially reasonable time after risk of loss passed to the buyer; or 3) the seller is unable to resell the goods after reasonable effort or circumstances indicate that any such effort would be unavailing. *Id*.  The parties agree that the goods are custom devices that cannot be sold to other customers unless an identical design is ordered, which has not happened. As such, SIM has shown that any such effort to resell the goods would be unavailing.

The only remaining material question of fact is whether SpineFrontier failed to pay the price of the goods as it became due. SpineFrontier claims the price for the goods was due only upon delivery of the goods; therefore, it did not fail to pay the price as it became due and SIM is not entitled to recover the price. Alternatively, SIM claims SpineFrontier was obligated to pay the price for the medical devices within 30 days of the receipt of an invoice; as such, SIM is liable for the contract price of the goods.

Under Missouri law, "[a] contract is ambiguous when the terms are susceptible of more than one reasonable meaning. Interpretation of a contract is a jury question only when the court

6

determines that the contract is ambiguous and that there exists a genuine factual dispute regarding the intent of the parties." *Shaw Hofstra & Assocs. v. Ladco Dev., Inc.*, 673 F.3d 819, 825 (8th Cir. 2012) (quoting *Weitz Co. v. MH Washington*, 631 F.3d 510, 524 (8th Cir. 2011). The purchase orders are ambiguous as to whether payment was due before or after delivery, and as such the interpretation of the orders is a question for a jury.

  The parties agree that SpineFrontier's purchase orders are the contracts which govern their agreement. They note a "term" of "30 Days," and the invoices specify a payment term of "NET30." *See* Doc. No. 27-4, Doc. No. 27-7. SIM claims this term requires payment within 30 days of the receipt of an invoice. However, the purchase orders also state the delivery is FOB Destination. Pursuant to the Missouri UCC, § 400.2-319(1)(b), "when the term is F.O.B. the place of destination, the seller must at his own expense and risk transport the goods to that place and there tender delivery of them in the manner provided in this article (section 400.2-503)." "In a destination contract 'a buyer's duty to pay for goods is conditional on tender of delivery by the seller.' Tender of delivery entitles the seller to payment." *In re Payless Cashways, Inc.*, 306 B.R. 243, 255 (B.A.P. 8th Cir. 2004) (quoting Mo. Stat. Ann. § 400.2–507(1)).

  It is unclear whether the purchase orders require payment only after delivery, as denoted by the FOB Destination term, or whether payment is required within 30 days after receipt of the invoice pursuant to the 30-day term. Furthermore, neither the purchase orders nor the invoices specify when payment is due for inventory sent back to SIM to be reworked. If payment was due only after delivery and acceptance of the devices, SpineFrontier did not breach the agreements for the Unshipped or Reworked Inventory. As such, there remains a material question of fact and SIM is not entitled to summary judgment as a matter of law on its claim for breach of those agreements.

SIM urges the Court to adopt the reasoning in *Von Dutch Originals, LLC v. TSF, LLC*. No. CV052526DSFJWJX, 2007 WL 9706023, at *6 (C.D. Cal. Feb. 27, 2007). In *Von Dutch*, the buyer implemented a policy requiring vendors to send purchase orders and stopped paying for goods received from the seller because it was out of compliance with that new policy. The seller then withheld future orders. After a bench trial, the court found the buyer was obligated to pay for the withheld goods: "[seller] and [buyer] entered into binding contracts when [buyer] placed orders for the Withheld Goods. Therefore, [buyer] is obligated to pay the agreed price and its failure to do so constitutes a breach of contract." *Id*. at *6 (internal citation omitted).

For the following reasons, the Court finds the *Von Dutch* opinion unpersuasive. The court's reasoning was sparse and the decision was reached following a bench trial rather than a motion for summary judgment. Moreover, it is clear that the breach of one contract does not operate as a breach of other, similar contracts. *See Nat'l Farmers Org.*, 560 F.2d at 1357 (Seller was not entitled to stop making deliveries on non-breached contracts where buyer breached other contracts by withholding payment). *See also, In re H.J. Scheirich Co.*, 982 F.2d 945, 951 (6th Cir. 1993) (Seller was not entitled to withhold delivery of orders "which it accepted without conditions and subject to future payment, for the reason that [buyer] had an unpaid account for earlier orders."); *GFSI, Inc. v. J-Loong Trading, Ltd.*, No. CIV A 05-2302-KHV, 2006 WL 3523782, at *3 (D. Kan. Dec. 6, 2006) (purchase orders and corresponding invoices constitute separate contracts, so buyer "could not lawfully set off the cost of the defective [goods] against the amount due on [goods] from separate purchase orders."). The purchase orders constitute separate contracts. Accordingly, SpineFrontier's admitted breach of certain purchase orders does not entitle SIM to recover the price of the remaining purchase orders until the price becomes due.

Because there remains a material question of fact as to when the price for the Unshipped and Reworked Inventory was due, summary judgment is inappropriate.

### IV. Conclusion

For these reasons, SIM's motion for summary judgment is granted in part. SpineFrontier does not contest that it breached the agreements for the Shipped Inventory, and as such summary judgment is appropriate. Factual disputes remain as to the claims for Unshipped and Reworked Inventory.

Accordingly,

**IT IS HEREBY ORDERED** that SIM's Motion for Summary Judgment [26] is **GRANTED in part** and **DENIED in part** in accordance with the rulings herein.

Dated this 10th day of February, 2022.

                                                                 _____
                                                                 JOHN A. ROSS
                                                                 UNITED STATES DISTRICT JUDGE